698 So.2d 593 (1997)
John B. PACHECO, III, Appellant,
v.
STATE of Florida, Appellee.
No. 96-00137.
District Court of Appeal of Florida, Second District.
August 1, 1997.
*594 Gerald A. Tavares, Tarpon Springs, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wendy Buffington, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
John Pacheco challenges his convictions for first degree arson and other related crimes. He argues that the trial court should not have allowed the jury to hear the taped statement of a codefendant who did not testify. He also contends that, without that improper component, the state's evidence would have been legally insufficient to prove him guilty of arson in the first degree. Pacheco is correct on both accounts, and we reverse his convictions. But, for reasons that will be explained, we remand for a new trial on all charges.
Because we are deciding this case on a narrow evidentiary point, we will not discuss all the facts leading to Pacheco's convictions. The relevant details are that Pacheco and several others were charged with arson of the USA Flea Market in Pasco County. The crime was committed late in the evening, when the flea market was closed to business. Christopher Neilson, a codefendant, had refused to testify at Pacheco's trial, and the court had held him in contempt. While cross-examining a detective who had investigated the crime, defense counsel tried to elicit the detective's reason for focusing on Pacheco as a suspect. Counsel asked the following questions and received the following answers:
Q. [Defense Counsel] All right, sir. And it was through Ms. Humphrey that John Pacheco was, as I believe you stated, developed as a suspect?
A. [Detective] Correct.
Q. And that without Kathy Humphrey, you would have not developed Mr. Pacheco as a suspect; is that also true?
A. That is true.
Q. And thus would not have had a photopack with Mr. Pacheco or with any of the other four to present to these two individuals; is that not also true?
A. You're asking me to speculate sir, whether or not they would have ever been developed as suspects, and I can't say for sure whether they would have or not.
Q. I'll accept that.
On redirect, the prosecutor asked the detective whether Christopher Neilson, the non-testifying codefendant, had told police that Pacheco had been with him the night of the fire. The defense objected; but the court ruled that Pacheco's counsel had "opened the door," and that under the doctrine of completeness the state could inquire whether Neilson had implicated Pacheco in the arson. The prosecutor then asked the detective whether he had taken a statement from Neilson before Pacheco's arrest. Pacheco's counsel objected on hearsay grounds, but was overruled. The detective related the substance of Neilson's statement, in which Neilson blamed Pacheco for the crime and attempted to minimize his own role. After the detective finished, the state moved Neilson's taped statement into evidence and played it for the jurors.
*595 The state first contends that Pacheco failed to preserve any issue about the admissibility of the taped statement because he did not object when the state introduced it. We disagree. The record shows that the court believed an objection had been made. When the prosecutor introduced the tape, the judge remarked "I'm going to overrule the defense's objection." Therefore, we address the merits of Pacheco's argument.
Both the detective's testimony about what Neilson told him and Neilson's taped statement were inadmissible hearsay. But even beyond that, the admission of a codefendant's statement implicating an accused, when the accused has no opportunity to cross-examine the codefendant, can violate the Confrontation Clause of the Sixth Amendment to the United States Constitution. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); see also Lee v. Illinois, 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514, 526 (1986); Farina v. State, 679 So.2d 1151 (Fla.1996). As the Lee Court noted, a codefendant's statements are especially suspect. Because he has a strong motivation to implicate someone else, his statements about what the accused said or did are even less credible than ordinary hearsay. Lee, 476 U.S. at 541, 106 S.Ct. at 2062, 90 L.Ed.2d at 526; see also Farina, 679 So.2d at 1155. Here, Pacheco could not cross-examine Neilson because Neilson had refused to testify at trial.
The trial court was mistaken to rely on the doctrine of completeness as justification for admitting the information from Neilson's statement. Under that doctrine, redirect testimony is admissible to qualify, limit or explain testimony given on cross-examination. Wright v. State, 582 So.2d 774, 775 (Fla. 2d DCA 1991). For example, if the defendant asks a witness questions designed to bring forth favorable portions of a codefendant's statement, the prosecutor properly may inquire about the remainder of the codefendant's confession, including portions that implicate the accused. Walsh v. State, 596 So.2d 756, 757 (Fla. 4th DCA), review denied, 605 So.2d 1268 (Fla.1992); see also Tompkins v. State, 502 So.2d 415, 419 (Fla.1986) (questions on cross examination about what victim told her mother opened door on redirect to questions about victim's other statements concerning accused), cert. denied, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987). Here, Pacheco's counsel did not ask what Christopher Neilson had told the detective. Rather, he inquired about Ms. Humphrey's role in the apprehension of his client. The issue that needed to be qualified or explained was whether anyone other than Ms. Humphrey had led the detective to suspect Pacheco. Because the jury could have inferred that she was the only one who had incriminated Pacheco, the state properly could ask whether Neilson had also implicated him. Cf. Wright, 582 So.2d at 775 (defendant's questions to detective established that accomplice's statement was the basis for the arrest; jurors could have inferred that portion of statement elicited on cross-examination was not sufficient to arrest defendant; state properly allowed to rebut the inference by asking about the nature of the statement).
The detective's testimony and the taped statement, however, went well beyond the fact that Neilson accused Pacheco of participating in the crime. This evidence provided specific details about the commission of the offense, and it portrayed Pacheco as the instigator of the crime. Pacheco's limited questions about Ms. Humphrey's role in his capture did not throw the door open wide enough to admit the entire confession of a codefendant who refused to testify. This evidence was inadmissible; it violated both the hearsay rule and the Confrontation Clause.
Having determined that the lower court erred in admitting this evidence, we must consider whether that error was harmless. See Farina, 679 So.2d at 1157 (recognizing that Confrontation Clause violations are subject to harmless error analysis); Garcia v. State, 659 So.2d 388 (Fla. 2d DCA 1995) (hearsay violations may be harmless error). The state presented other evidence that Pacheco committed the arson. But its two main witnesses, who gave details about Pacheco's participation in the crime, had severe credibility problems. Matt Touchton was a coperpetrator who had changed his account of what happened several times. Ms. Humphrey, who testified that Pacheco admitted to her that he was involved in the *596 crime, had been convicted of thirty felonies. Although Neilson's out-of-court statement diverged from their testimony on some points, it corroborated them on others. This corroboration may well have caused the jurors to give more weight to the testifying witnesses than they otherwise might have done.
More importantly, to convict Pacheco of first degree arson under the circumstances of this case, it was necessary to prove that he knew or had reasonable grounds to believe that the premises were occupied by a human being. See § 806.01(1)(c), Fla. Stat. (1991). Nielson's statement was the only evidence that at the time of the fire Pacheco was aware that a security guard was patrolling the flea market. The state has not proved beyond a reasonable doubt that the admission of Neilson's statement did not contribute to the verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). Therefore, we must reverse Pacheco's convictions and remand for a new trial.
A question remains as to the scope of the new trial. Pacheco argues that, since Nielson's inadmissible statement was the only evidence of an element necessary to convict Pacheco of first degree arson, he is entitled to be acquitted on that charge and retried only on second degree arson. We have determined that, in this situation, double jeopardy does not bar retrial on first degree arson. The United States Supreme Court, in Lockhart v. Nelson, 488 U.S. 33, 40, 109 S.Ct. 285, 290, 102 L.Ed.2d 265, 273 (1988), held that retrial is permitted when "a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction...." Accordingly, on remand Pacheco may be retried on all the original charges, including first degree arson.
Reversed and remanded.
FRANK, A.C.J., and LAZZARA, J., concur.