DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOEL HUNT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1577

[November 20, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Edward H. Merrigan Jr., Judge; L.T. Case No. 16-5155 CF10A.

Carey Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jonathan P. Picard, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, C.J.

Appellant was convicted of aggravated battery with a hate crime. At trial, the victim and his friend both testified to appellant stabbing the victim. Appellant's wife and son testified that the victim hit appellant before the stabbing. Appellant's defense was that his actions were self-defense. The state introduced the testimony of a detective who interviewed the victim at length. During the detective's testimony, the state directly asked whether, based on his training and experience, "there [was] self-defense used in this case by the defendant." The detective responded, "[N]o." The trial court erred in admitting this opinion testimony.

The detective testified that, based on his training and experience, there was no self-defense legitimately available for appellant. If there was no self-defense, then appellant was effectively left with no defense. The credibility of appellant's claim of self-defense was exclusively within the province of the jury. The deputy's testimony invaded this exclusive

province.  Thus, we reverse and remand for a new trial.[1]

The victim, an African American, was visiting his friend when appellant, a neighbor of the friend, came to sit on a bench next to the victim.  The victim asked appellant why he was sitting so close, and appellant stated that it was his bench.  Appellant was drinking alcohol and appeared intoxicated.  Both the victim and friend declined appellant's offer of alcohol.  At that point, appellant talked about killing his wife because she was having an affair with an African American, using a racial epithet.  The friend then asked appellant if he was a racist.  Appellant said his parents were racists, and then proceeded to use the same racial epithet over and over.  The victim repeatedly asked appellant what appellant had just said.  Appellant told the victim that he would not "f---ing win."  The friend heard the victim state, "Say that s--t again."  The victim also heard appellant say to appellant's son, "Boy.  Boy.  Get him, boy.  Attack."

The victim then felt something "pop," at which time he told his friend that he had been stabbed and to call the police.  According to the victim, appellant tried to stab him again and ran after him saying, "I'm going to f---ing kill you, n----r."  The victim ran away, with appellant saying, "Come here, n----r.  Let me finish the job."  Appellant's son and wife denied that appellant chased the victim following the stabbing.

The police then arrived at the scene and ordered appellant, who had returned to his house, to exit the house and put his weapon down.  Appellant later gave a statement to Detective Huertas.  Appellant claimed that the victim hit him and broke his glasses.  At trial, appellant's wife and son testified that the victim was hitting appellant in the head before appellant stabbed the victim.  The victim's friend stated that he saw the victim standing over appellant, but that the victim did not put his hands on appellant.

During the trial, the detective testified about his investigation.  The detective had spoken at length with the victim and appellant.  The state introduced the following statement appellant gave to the detective:

> I had a bench, a nice little bench and I sit there.  One of the gentleman was the neighbor.  The other black has been sitting out doing drug deals all god damn day, we see them all the time.  We haven't seen him since the other black guy moved two weeks ago.  He came up and started trying to make me

---

[1] We affirm all other issues.  The clerical correction in the conviction has become moot based on the disposition of this case, and all other issues are without merit.

buy drugs. So I'm sitting there drinking and all that and we're standing—the conversation gets a little sh--ty. The neighbor guy gets up and walks away. The guy from next door, he doesn't live there anymore. It was his mother-in-law that owned the place but she sold the place now so we have a new landlord, all right. And this guy starts, I mean, I don't know how to explain—I'm sitting there and he's right here. There's—he's pushing at me and he started to slap me in the head. Everything I can f---ing do.

. . . .

[T]his guy started slapping me in the head, and I drove him in the f---ing chest. F--k off me, man.

During the testimony of Detective Huertas, the state asked him the following:

Q Detective Huertas, during your investigation did you find that the defendant used the word n----r towards the victim[] . . . on March 5, 2016?

A Yes.

Q During your investigation, was there any evidence that the victim . . . was hitting the defendant?

A No.

Q Based on your training and experience, was there self-defense used in this case by the defendant?

A No.

Q Based on your training and experience, did the defendant stand his ground in any way?

A No.

Q Based on your training and experience, was the defendant defending anyone else?

A No.

3

[DEFENSE COUNSEL]: I am going to object as to invading the province of the jury.[2]

The trial court overruled appellant's objection. Subsequently, appellant was convicted of aggravated battery with a hate crime. Appellant appeals the conviction.

We review this conviction, and the trial court's decision to admit the detective's testimony as evidence, under the abuse of discretion standard. *Jackson v. State*, 107 So. 3d 328, 339 (Fla. 2012). The trial court's use of discretion still must comport with the rules of evidence. *Id.*

Appellant argues that Detective Huertas's testimony about the validity of his claim of self-defense invaded the exclusive province of the jury. The state responds that this issue was not preserved. The state claims that only the last question in the string of questioning by the state was preserved with a contemporaneous objection, since only after the fifth question did appellant object. The key question in dispute was the third question.

An objection is required to be made at the time of error "to give the trial court the opportunity to correct" the error. *Mansueto v. State*, 148 So. 3d 813, 815 (Fla. 4th DCA 2014). Still, "[a]n objection need not always be made at the moment an examination enters impermissible areas of inquiry." *Jackson v. State*, 451 So. 2d 458, 461 (Fla. 1984). An issue can be properly preserved if the objection is made "shortly after the comment and before the witness was relieved." *Bradley v. State*, 214 So. 3d 648, 654-55 (Fla. 2017); *see also Fratcher v. State*, 37 So. 3d 365, 367 (Fla. 4th DCA 2010) (holding that the issue was preserved since the objection was made "shortly thereafter" the statement in question, and "soon enough that the judge could have issued a curative instruction to the jury had he sustained the objection").

This court has determined that a contemporaneous objection preserved a motion for mistrial where the motion was made three questions after the objectionable comment. *Roban v. State*, 384 So. 2d 683, 685 (Fla. 4th DCA 1980); *see also Fittipaldi USA, Inc. v. Castroneves*, 905 So. 2d 182, 185 (Fla. 3d DCA 2005) (finding an objection made "[f]our to five questions" after the testimony in question was timely and preserved the issue for review because of "the closeness in time between [the] testimony and

---

[2] This transcript reflects the last version of the trial transcript. It is appropriate to abide by the corrected transcript when it is available. *See Myers v. State*, 557 So. 2d 682, 682-83 (Fla. 3d DCA 1990).

4

counsel's objection"). Based on the foregoing authority, we find the objection in this case was timely and preserved the issue for our review.

When the detective was asked whether "[b]ased on your training and experience, was there self-defense used in this case by the defendant" and he said, "No," the detective entered an "impermissible area[] of inquiry." *Jackson*, 451 So. 2d at 461. The law is clear. "A police officer's testimony or comments suggesting a defendant's guilt invades the province of the jury to decide guilt or innocence." *Lopiano v. State*, 164 So. 3d 82, 84 (Fla. 4th DCA 2015).

Thus, "[i]t is clear that error is occasioned where a witness, including a lay witness, is permitted to offer her opinion about the guilt of the defendant." *Zecchino v. State*, 691 So. 2d 1197, 1198 (Fla. 4th DCA 1997). It is especially harmful when a police officer offers an opinion on the guilt, or in this case, the sole defense of appellant. "Police officers, by virtue of their positions, rightfully bring with their testimony an air of authority and legitimacy. A jury is inclined to give great weight to their opinions . . . ." *Salomon v. State*, 267 So. 3d 25, 32 (Fla. 4th DCA 2019) (citation omitted).

A police officer's testimony is especially prejudicial when it invades the province of the jury as to the defendant's sole defense. In *Bartlett v. State*, 993 So. 2d 157 (Fla. 1st DCA 2008), the investigator ruled out the possibility that the defendant acted in self-defense, where the defendant was relying on a "battered spouse syndrome" defense after being charged in the murder of her boyfriend. The First District held that

> by allowing the State's questions and [the investigator's] detailed answers on a matter within the realm of an ordinary juror's knowledge and understanding, the trial court improperly invaded the province of the jury as the fact-finder and allowed the detective to serve as a fact-finder during the guilt phase by determining that self-defense was not a viable defense for Appellant.

*Id.* at 161. In this case, the detective acted effectively as a fact-finder by neutralizing appellant's defense in front of the jury. This was error.

In many cases, courts have found that the erroneous admission of testimony that invaded the exclusive role of the jury was not harmless error. *See, e.g., Martinez v. State*, 761 So. 2d 1074, 1080-81 (Fla. 2000) (finding that the detective's improper opinion as to the defendant's guilt was not harmless error in light of the evidence in the record); *Edwards v. State*, 248 So. 3d 166, 167 (Fla. 4th DCA 2018) (holding that a police

officer's testimony on credibility invaded the province of the jury and was not harmless error when the officer explained that, "based on his training and experience in conducting interviews, certain body language and mannerisms indicate deception," and the defendant was displaying such mannerisms); *Bartlett*, 993 So. 2d at 166-67 (holding that the state was unable to meet its burden to show harmless error when an officer gave opinion testimony as to the existence of self-defense). That is true in this case as well. The admission of the detective's testimony about appellant's self-defense, or rather lack of self-defense, was harmful error.

In summary, we find that the admission of the detective's testimony about appellant's theory of self-defense invaded the exclusive province of the jury and was harmful error. We, therefore, reverse appellant's conviction and sentence and remand for a new trial.

*Reversed and remanded.*

CONNER and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

6